UNITED STATES DISTRICT COURT
FOR THE CENTRAL DISTRICT OF ILLINOIS

| | |
|---|---|
| INDIANA FARMERS MUTUAL INSURANCE COMPANY, <br><br>          Plaintiff, <br><br>     v. <br><br> HENRICHS DRAINAGE II LLC, MARATHON PIPE LINE, LLC, and BRAD ORR, <br><br>          Defendants. | ) ) ) ) ) ) ) Case No. _____ ) ) ) ) ) ) ) |

## COMPLAINT FOR DECLARATORY JUDGMENT

Plaintiff, Indiana Farmers Mutual Insurance Company ("Indiana Farmers"), by and through its attorneys, SmithAmundsen LLC, and pursuant to 28 U.S.C. § 2201 and 2202, brings this Complaint for Declaratory Judgment and states as follows:

## PARTIES

1.      Plaintiff Indiana Farmers is a corporation existing under and by virtue of the laws of the State of Indiana with its principal place of business in Indianapolis, Indiana and at all times relevant was duly authorized and licensed to write policies of insurance in Illinois.

2.      Defendant Henrichs Drainage II LLC ("Henrichs"), at all times relevant, was an Illinois limited liability company with its principal place of business in Paxton, Illinois. The members of Henrichs include Robert Sturm, Ben Henrichs, Andrew Henrichs, and/or Ralph Henrichs, who, at all relevant times, were citizens of Illinois.

3.      Defendant Marathon Pipe Line, LLC ("MPL"), at all relevant times, was a Delaware limited liability company with its principal place of business in Findlay, Ohio. The sole member of MPL is MPLX Pipe Line Holdings LLC, a Delaware limited liability company with its

1

principal place of business in Findlay, Ohio. MPLX Pipe Line Holdings LLC is wholly owned by MPLX Operations LLC, a Delaware limited liability company with its principal place of business in Findlay, Ohio. MPLX Operations LLC is wholly owned by MPLX LP, a Delaware master limited partnership with its principal place of business in Findlay, Ohio. MPLX LP is owned by MPC Investment LLC, MPLX GP LLC, MPLX Logistics Holdings LLC, and the public through shares traded under the ticker symbol "MPLX." MPLX GP LLC is a Delaware limited liability company with its principal place in Findlay, Ohio. The sole member of MPLX GP LLC is MPC Investment LLC. MPLX Logistics Holdings LLC is a Delaware limited liability company with its principal place in Findlay, Ohio. The sole member of MPLX Logistics Holdings LLC is MPC Investment LLC. MPC Investment LLC is a Delaware limited liability company with its principal place of business in Findlay, Ohio. MPC Investment LLC is wholly owned by Marathon Petroleum Corporation. Marathon Petroleum Corporation a Delaware corporation with its principal place of business in Findlay, Ohio.

4.      Defendant Brad Orr ("Orr"), at all times relevant, was the owner of a farm property located approximately 1.25 miles southwest of the intersection of North 1100 East Road and East U.S. Highway 24 in Iroquois County, Illinois ("Property") and was a citizen of Iroquois County, Illinois.

## JURISDICTION

5.      The jurisdiction of this Court is premised upon 28 U.S.C. § 1332 in that there is complete diversity of citizenship between the parties and the amount in controversy exceeds the sum of $75,000, exclusive of interest and costs.

## VENUE

6. Venue is premised upon 28 U.S.C. § 1391 in that the underlying incident for which coverage is being sought occurred in this district.

## INCIDENT

7. Henrichs was retained by Orr to lay field tile at the "Property."

8. On July 14, 2021, while laying field tile at the Property, Henrichs struck a gasoline pipeline owned by MPL, resulting in the release of unleaded gasoline ("Incident").

9. Following the Incident, MPL, in conjunction with the Illinois Environmental Protection Agency ("IEPA") and the United States Environmental Protection Agency ("EPA"), initiated efforts to contain and remediate the gas leak.

## IEPA COMPLAINT

10. On July 29, 2021, the IEPA filed a Verified Complaint for Injunctive Relief and Civil Penalties ("IEPA Complaint") against Henrichs, MPL, and Orr. The IEPA Complaint is attached as Exhibit A.

11. The IEPA Complaint alleges that the Incident resulted in a release of an estimated 1200 barrels of unleaded gasoline.

12. The IEPA Complaint alleges that the unleaded gasoline that was released migrated to an unnamed agricultural ditch, causing a visible sheen on the surface water in the ditch.

13. The IEPA Complaint also alleges that six residential water wells are situated within a one-mile radius of the pipeline release and that on July 16, 2021, thirteen dead muskrats were reported as having been impacted by the release.

14. The IEPA Complaint alleges that the release impacted soil, groundwater, surface water, animal life, and caused a potential impact to nearby residential water wells, that work to

remediate the property and surrounding areas is ongoing, and that unknown quantities of unleaded gasoline remain in the soil, groundwater, and surface waters at and around the property.

15. Count I of the IEPA Complaint alleges that the release has created circumstances of substantial damage to the environment and public health and welfare requiring immediate action to remediate remaining contamination and seeks an injunction ordering Henrichs, MPL, and Orr to undertake all corrective action to abate the danger to the environment, public heath, and public welfare.

16. Count II of the IEPA Complaint alleges that the release has created "water pollution" as defined under the Illinois Environmental Protection Act ("Act") and seeks an order requiring Henrichs, MPL, and Orr to undertake necessary corrective action to abate violations of the Act.

17. Count III of the IEPA Complaint alleges that the release has created a water pollution hazard under the Act and seeks an order requiring Henrichs, MPL, and Orr to undertake necessary corrective action to abate violations of the Act.

18. Count IV seeks recovery of all response and oversight costs incurred by the IEPA in connection with the release.

## OTHER CURRENTLY KNOWN CLAIMS RELATED TO INCIDENT

19. Orr has asserted damage to fields on the Property that were damaged as a result of the release of the gasoline and/or as a result of efforts to clean-up, contain and remediate the release.

20. Upon information and belief, some of Orr's neighbors also claim to have sustained damage to their property as a result of the release of the gasoline and/or as a result of efforts to clean-up, contain and remediate the release.

21. MPL seeks recovery for approximately 42,000 gallons of fuel that were lost as a result of the release.

22. MPL seeks recovery of amounts incurred in clean-up and remediation efforts.

23. MPL also seeks recovery for damage to approximately 100 feet of MPL's pipeline that was damaged as a result of the Incident.

23. Certain portions of the field tile laid by Henrichs at the Property also allegedly have to be replaced as a result of the Incident.

24. Henrichs also received notification from the United States Coast Guard that Henrichs is a potentially responsible party in connection with the Incident, which allegedly poses a substantial threat of a discharge of gasoline into navigable waters and is responsible for removal costs and damages under the Oil Pollution Act of 1990 (33 USC 2701 *et seq*).

25. Indiana Farmers expects additional claims may still be made against Henrichs in connection with the Incident.

## INDIANA FARMERS CGL POLICY

26. Indiana Farmers issued Policy No. CPP1018878 to Henrichs, which was in effect on the date of the Incident and includes commercial general liability coverage with limits in the amount of $1,000,000 each occurrence ("CGL Policy"). A certified copy of the CGL Policy is attached as Exhibit B.

27. The CGL Policy provides, in pertinent part under Form No. CG 00 01 10 01 titled "Commercial General Liability Coverage Form," as follows:

**SECTION I – COVERAGES**

**COVERAGE A BODILY INJURY AND PROPERTY DAMAGE LIABILITY**

1. **Insuring Agreement**

    **a.**    We will pay those sums that the insured becomes legally obligated to pay as damages because of "bodily injury" or "property damage" to which this insurance applies. We will have the right and duty to defend the insured against any "suit" seeking those damages. However, we will have no duty to defend the insured against any "suit" seeking damages for "bodily injury" or "property damage" to which this insurance does not apply…

* * * *

    **b.**    This insurance applies to "bodily injury" and "property damage" only if:

        **(1)**    The "bodily injury" or "property damage" is caused by an "occurrence" that takes place in the "coverage territory";

* * * *

**2.**    **Exclusions**

This insurance does not apply to:

* * * *

**j.**    **Damage to Property**

"Property damage" to:

    **(5)**    That particular part of real property on which you… are performing operations, if the "property damage" arises out of those operations; or

    **(6)**    That particular part of any property that must be restored, repaired or replaced because "your work" was incorrectly performed on it.

* * * *

28.    The CGL Policy defines "occurrence" as an accident.

29.    The CGL Policy defines "property damage" as: a. Physical injury to tangible property, including all resulting loss of use of that property; or b. Loss of use of tangible property that is not physically injury.

6

30. "Your work" is defined in the CGL Policy as (1) work or operations performed by you or on your behalf; and (2) materials, parts or equipment furnished in connection with such work or operations and includes warranties or representations with respect to the fitness, quality, durability, performance or use of "your work."

31. The CGL Policy includes Form No. CG 21 65 12 04, titled "Total Pollution Exclusion With A Building Heating, Colling And Dehumidifying Equipment Exception And Hostile Fire Exception" ("Total Pollution Exclusion"), which replaces Exclusion f. Pollution under Form No. CG 00 01 10 01 and provides as follows:

**f.    Pollution**

**(1)**   "Bodily injury" or "property damage" which would not have occurred in whole or part but for the actual, alleged or threatened discharge, dispersal, seepage, migration, release or escape of "pollutants" at any time.

This exclusion does not apply to:

**(a)**   "Bodily injury" if sustained within a building which is or was at any time owned or occupied by, or rented or loaned to, any insured and caused by smoke, fumes, vapor or soot produced by or originating from equipment that is used to heat, cool or dehumidify the building, or equipment that is used to heat water for personal use, by the building's occupants or their guests; or

**(b)**   "Bodily injury" or "property damage" arising out of heat, smoke or fumes from a "hostile fire" unless that "hostile fire" occurred or originated:

**(i)**   At any premises, site or location which is or was at any time used by or for any insured or others for the handling, storage, disposal, processing or treatment of waste; or

**(ii)**   At any premises, site or location on which any insured or any contractors or subcontractors working directly or indirectly on any insured's behalf are performing operations to test for, monitor, clean up,

> > remove, contain, treat, detoxify, neutralize or in any way respond to, or assess the effects of, "pollutants".
>
> **(2)** Any loss, cost or expense arising out of any:
>
> > **(a)** Request, demand, order or statutory or regulatory requirement that any insured or others test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of, "pollutants"; or
> >
> > **(b)** Claim or suit by or on behalf of a governmental authority for damages because of testing for, monitoring, cleaning up, removing, containing, treating, detoxifying or neutralizing, or in any way responding to, or assessing the effects of, "pollutants".

32. The CGL Policy defines "pollutants" to mean "any solid, liquid, gaseous or thermal irritant or contaminant, including smoke, vapor, soot, fumes, acids, alkalis, chemicals and waste. Waste includes materials to be recycled, reconditioned or reclaimed."

33. The CGL Policy also includes an endorsement titled "Illinois Changes – Defense Costs," which adds to the Insuring Agreement of the CGL Policy the following:

> **B.** If we initially defend an insured ("insured') or pay for an insured's ("insured's") defense but later determine that the claim(s) is (are) not covered under this insurance, we will have the right to reimbursement for the defense costs we have incurred.
>
> The right to reimbursement for the defense costs under this provision will only apply to defense costs we have incurred after we notify you in writing that there may not be coverage, and that we are reserving our rights to terminate the defense and seek reimbursement for defense costs.

### INDIANA FARMERS UMBRELLA POLICY

34. Indiana Farmers also issued Henrichs Commercial Liability Umbrella Coverage under Policy No. CUP1003914, with each occurrence limits for bodily injury and property damage liability in the amount of $1,000,000 ("Umbrella Policy"). A certified copy of the Umbrella Policy is attached as Exhibit C.

35. The Umbrella Policy provides, in pertinent part, as follows:

**SECTION I – COVERAGES**

**COVERAGE A – BODILY INJURY AND PROPERTY DAMAGE LIABILITY**

1. **Insuring Agreement**

    a. We will pay on behalf of the insured the "ultimate net loss" in excess of the "retained limit" because of "bodily injury" or "property damage" to which this insurance applies…

    * * * *

    b. This insurance applies to "bodily injury" and "property damage" only if:

        (1) The "bodily injury" or "property damage" is caused by an "occurrence" that takes place in the "coverage territory";

        * * * *

2. **Exclusions**

    This insurance does not apply to:

    i. **Pollution**

        (1) "Bodily injury" or "property damage" which would not have occurred in whole or part but for the actual, alleged or threatened discharge, dispersal, seepage, migration, release or escape of "pollutants" at any time; or

        (2) "Pollution cost or expense".

        * * * *

    m. **Damage to Property**

        "Property damage" to:

        * * * *

        (5) That particular part of real property on which you… are performing operations, if the "property damage" arises out of those operations; or

9

      **(6)**      That particular part of any property that must be restored, repaired or replaced because "your work" was incorrectly performed on it.

* * * *

**SECTION V – DEFINITIONS**

* * * *

13.    "Occurrence" means an accident…

* * * *

15.    "Pollutants" mean any solid, liquid, gaseous or thermal irritant or contaminant, including smoke, vapor, soot, fumes, acids, alkalis, chemicals and waste. Waste includes materials to be recycled, reconditioned or reclaimed.

16.    "Pollution cost or expense" means any loss, cost or expense arising out of any:

    **a.**    Request, demand, order or statutory or regulatory requirement that any insured or others test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of "pollutants"; or

    **b.**    Claim or suit by or on behalf of a governmental authority for damages because of testing for, monitoring, cleaning up, removing, containing, treating, detoxifying or neutralizing, or in any way responding to, or assessing the effects of, "pollutants".

* * * *

17.    "Ultimate net loss" means the total sum, after reduction for recoveries or salvages collectible, that the insured becomes legally obligated to pay by reason of settlement or judgments…

* * * *

36.    The Umbrella Policy includes Form No. CU 22 55 09 00 titled "Illinois Changes – Pollution Exclusion – Hostile Fire Exception," which exception is inapplicable here.

10

37. The Umbrella Policy also includes an endorsement titled "Illinois Changes – Defense Costs," which adds to the Insuring Agreement of the Umbrella Policy the following:

> **B.** If we initially defend an insured ("insured') or pay for an insured's ("insured's") defense but later determine that the claim(s) is (are) not covered under this insurance, we will have the right to reimbursement for the defense costs we have incurred.
>
> The right to reimbursement for the defense costs under this provision will only apply to defense costs we have incurred after we notify you in writing that there may not be coverage, and that we are reserving our rights to terminate the defense and seek reimbursement for defense costs.

## DECLARATORY JUDGMENT

38. Indiana Farmers has agreed to defend Henrichs for the Incident, including the IEPA Complaint, under a reservation of rights.

39. "Pollutants" as defined in the CGL Policy and Umbrella Policy includes gasoline.

40. Any and all claims for "property damage" against Henrichs in connection with the Incident for "property damage" that would not have occurred in whole or part but for the actual, alleged or threatened discharge, dispersal, seepage, migration, release or escape of gasoline are excluded from coverage under the CGL Policy and the Umbrella Policy.

41. Any and all claims for "property damage" against Henrichs for any loss, cost or expense to monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of, "pollutants" arising out of the Incident are excluded from coverage under the CGL Policy and the Umbrella Policy.

42. Any and all claims or suits by or on behalf of a governmental authority against Henrichs for damages for testing, monitoring, cleaning, removing, containing, treating, detoxifying, or in any way responding to or assessing the effects of "pollutants" arising out of the Incident are excluded from coverage under the CGL Policy and the Umbrella Policy.

43. Any and all claims against Henrichs for "property damage" to that particular part of real property on which Henrichs was performing operations are excluded to the extent the "property damage" arises out of Henrichs' operations under the CGL Policy and Umbrella Policy.

44. Any and all claims against Henrichs for "property damage" to that particular part of any property that must be restored, repaired or replaced because "your [Henrich's] work" was incorrectly performed are excluded under the CGL Policy and Umbrella Policy.

WHEREFORE, Indiana Farmers asks this Court to find and declare as follows:

A. All of the claims alleged in the IEPA Complaint are excluded from coverage under the CGL Policy pursuant to the Total Pollution Exclusion;

B. All of the claims alleged in the IEPA Complaint are excluded from coverage under the Umbrella Policy pursuant to the pollution exclusion;

C. That Indiana Farmers has no obligation to defend Henrichs in connection with the IEPA Complaint and can withdraw its defense and seek reimbursement of all sums incurred in that defense;

D. That Indiana Farmers has no obligation to indemnify Henrichs in connection with the IEPA Complaint;

E. Any claims against Henrichs by the U.S. Coast Guard for pollution of waterways falls within the Total Pollution Exclusion of the CGL Policy and the pollution exclusion of the Umbrella Policy and, therefore, Indiana Farmers has no obligation to defend or indemnify Henrichs in connection with such claims;

F. Any claims against Henrichs related to costs and expenses incurred or that will be incurred in cleaning up, remediating and/or restoring the property are excluded from coverage under the Total Pollution Exclusion of the CGL Policy and the pollution exclusion of the Umbrella Policy and, therefore, Indiana Farmers has no obligation to defend or indemnify Henrichs in connection with such claims;

G. Any claims against Henrichs for "property damage" resulting from any clean up or remediation efforts in connection with the Incident are excluded from coverage under the Total Pollution Exclusion of the CGL Policy and the pollution exclusion of the Umbrella Policy and, therefore, Indiana Farmers has no obligation to defend or indemnify Henrichs in connection with such claims;

H. Any claims against Henrichs arising from or related to the release of gasoline from the pipeline as a result of the Incident fall within the Total Pollution Exclusion of

the CGL Policy and the pollution exclusion of the Umbrella Policy and, therefore, Indiana Farmers has no obligation to defend or indemnify Henrichs in connection with such claims;

I. Any claims against Henrichs for any damage to the property on which Henrichs was working that arises out of Henrichs' work is excluded under the Total Pollution Exclusion of the CGL Policy and the pollution exclusion of the Umbrella Policy and, therefore, Indiana Farmers has no obligation to defend or indemnify Henrichs in connection with such claims;

J. Any claims against Henrich for damage to any property that must be restored, repaired or replaced because "your work" was incorrectly performed on it is excluded under the Total Pollution Exclusion of the CGL Policy and the pollution exclusion of the Umbrella Policy and, therefore, Indiana Farmers has no obligation to defend or indemnify Henrichs in connection with such claims; and

K. For any further relief this Court deems proper.

Respectfully submitted,

Indiana Farmers Mutual Insurance Company

By its attorneys:

/s/Christine V. Anto
Christine V. Anto
SmithAmundsen LLC
150 North Michigan Avenue, Suite 3300
Chicago, IL  60601
Phone: (312) 894-3200
Fax: (312) 894-3210
canto@salawus.com